# In the United States Court of Federal Claims

No. 19-688C

(Filed: August 17, 2021)

|  |  |
|---|---|
| **SILVER STATE LAND LLC,** | ) ) ) |
| *Plaintiff,* | ) ) ) |
| v. | ) ) ) |
| **THE UNITED STATES,** | ) ) ) |
| *Defendant.* | ) ) |

*Seth H. Locke*, Perkins Coie, LLP, Washington, D.C., for Plaintiff.  With him on the briefs were *Paul B. Smyth*, *Alexander O. Canizares*, and *Brenna D. Duncan*.

*Erin K. Murdock-Park*, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for Defendant.  With her on the briefs were *Brian M. Boynton*, Acting Assistant Attorney General, Civil Division, *Martin F. Hockey, Jr.*, Acting Director, *Allison Kidd-Miller*, Assistant Director, *Borislav Kushnir* and *Brendan D. Jordan*, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C.  Of counsel were *Erica L. Anderson* and *Ryan M. Sklar*, United States Department of Interior, Office of the Solicitor, Pacific Southwest Region, Sacramento, CA.

## OPINION AND ORDER

**SOLOMSON, Judge.**

On May 9, 2019, Plaintiff Silver State Land LLC ("Silver State"), filed its original complaint in this Court against Defendant, the United States, acting by and through the Bureau of Land Management ("BLM").  ECF No. 1.  On October 24, 2019, Silver State filed an amended complaint, in which Silver State alleged, among other things, that the government breached an express contract to convey to Silver State a 480-acre tract of public land in Henderson, Nevada (the "Henderson property").  ECF No. 16 at ¶¶ 1, 41–44.  Silver State seeks at least $98,000,000 in damages due to alleged "significant costs to develop" the land and as a result of its subsequent increase in fair market value.  *Id.* ¶¶ 38–39, 45–46.  On November 7, 2019, the government filed its motion to dismiss

for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6) of the Court of Federal Claims ("RCFC"). ECF No. 19. After holding oral argument on that motion, the Court, on May 6, 2020, dismissed, in part, and granted, in part, the government's motion, determining that Silver State sufficiently alleged a breach of an express contract claim and damages. *Silver State Land LLC v. United States*, 148 Fed. Cl. 217 (2020) (ECF No. 37).

During oral argument, the government argued that Silver State's complaint should be dismissed because "BLM already provided restitution when [it] refused to convey the Property to Silver State and instead returned Silver State's purchase money" and therefore "the election of remedies doctrine forecloses Silver State's claim for damages[.]" *Id.* at 265. While the Court noted its skepticism of the government's application of the election of remedies doctrine to the present case, the Court withheld judgment on the issue as the parties had not fully briefed the issue. *Id.*

On May 20, 2020, the government filed its answer to Silver State's amended complaint, in which the government asserted as follows:

> To the extent that plaintiff and defendant had a contract for the sale of certain Federal public lands . . . and further to the extent that the cancellation of the sale to plaintiff and/or the failure to deliver the land patent to plaintiff by May 13, 2013, amounted to a material breach of such contract, plaintiff is now barred from recovering damages for such breach because plaintiff accepted the return of its purchase money. Alternatively, if plaintiff is not barred from recovering damages from defendant, any sums recovered by plaintiff must be reduced by the value of plaintiff's unperformed contractual duties (including, but not limited to, the payment of the purchase price for the land since returned to plaintiff).

ECF No. 38 at ¶ 60.

On June 24, 2020, in the parties' joint status report, the government requested that the Court sever the election of remedies defense issue from the remaining litigation and allow for expedited discovery and briefing on that issue. ECF No. 41 at 8–11. Silver State opposed this request and the Court, on July 2, 2020, subsequently issued a schedule for further proceedings in this case without severing the issues. ECF No. 42. On October 5, 2020, however, the parties filed a joint motion, requesting that the Court amend the schedule to allow the parties to file motions for summary judgment solely on the government's election of remedies defense. ECF No. 43. The Court granted this

request.  Minute Order (Oct. 5, 2020).  On March 19, 2021, Silver State filed its motion for partial summary judgment regarding the government's asserted election of remedies defense, ECF No. 54 ("Pl. Mot."), and the government filed its motion for summary judgment.  ECF No. 55 ("Def. Mot.").  The parties filed their respective response briefs, ECF Nos. 56 ("Def. Resp."), 57 ("Pl. Resp."), and, on June 14, 2021, they provided additional supplemental briefing as directed by the Court's June 13, 2021 order.  ECF Nos. 60 ("Pl. Supp. Br."), 61 ("Def. Supp. Br.").  On June 15, 2021, the Court held oral argument on the pending motions.  ECF Nos. 58, 63 ("Oral Argument Tr.").

## I. Factual Background[1]

On April 4, 2012, BLM publicized its intent to sell the Henderson property.  JS ¶ 1, JX1.  On June 4, 2012, Silver State submitted its bid in the amount of $10,560,000 to purchase the property and provided BLM a $2,132,000 initial bid deposit.  JS ¶ 2, JX2–3.  On June 12, 2012, BLM formally accepted Silver State's purchase offer and, on August 17, 2012, the parties executed escrow instructions to complete the sale.  JS ¶¶ 3–4, JX4–5.  Pursuant to the escrow instructions, Silver State had to deposit the $8,428,000 balance in escrow with the Nevada Title Company ("Nevada Title") and, within 30 days of payment, BLM had to provide the land patent to Silver State.  JS ¶ 4, JX5.  Within three days of Silver State's receiving the land patent, Nevada Title would deliver BLM the final payment of $8,428,000.  *Id.*

On November 28, 2012, Silver State deposited $8,428,000 with Nevada Title.  JS ¶ 5, JX6.  In support of this transaction, Silver State borrowed $13,825,000 from Rockafellow Investment, LLC ("Rockafellow"), at an annual interest rate of 18%, and $1,093,000 from II C.B., L.P., at a 4% interest rate.  DX3.  Because of a dispute between Silver State and local municipal authorities concerning the future development of the Henderson property, Silver State and BLM executed three bilateral, written amendments to the initial escrow instructions and extended BLM's deadline for delivery of the land patent until May 13, 2013.  JS ¶¶ 6–8, JX7–9.  Due to this extension, Silver State was forced to return the loans that were funding the escrow account, and, in April 2013, Silver State signed for a new $18,000,000 loan with MVP Mortgage and CapSource, Inc., at a daily interest rate of 12%, and received loans from multiple additional lenders.  DX8, DX10–11, DX14.

---

[1] Because the facts of this case were presented at length in the Court's prior decision, *see Silver State Land*, 148 Fed. Cl. at 223–33, the Court reiterates only the facts pertinent to the instant motions.  Citations to the parties' joint stipulation of undisputed facts (ECF No. 53) are denoted as "JS" and citations to the parties' attached exhibits (ECF No. 53-1) are denoted as "JX".  The government filed additional exhibits (ECF No. 55-1), to which Plaintiff did not object, *see* Pl. Mot. at 8–9, that are designated as "DX".

On May 10, 2013, BLM notified Silver State, via a letter, that BLM was terminating the issuance of the land patent and that it would "take the steps necessary to return the purchase deposit and bid guarantee to Silver State ($2,132,000) as expeditiously as practicable." JS ¶¶ 9–10, JX10–12. On May 21, 2013, the United States Department of Treasury issued Silver State a check for $2,132,2000, on which the government printed, "BLM Refund . . . Refund due to cancellation of sale." JS ¶ 14, JX14. Three days later, Silver State deposited the check. *Id.* During May and June 2013, Nevada Title wired multiple "lender refunds" to Silver State's various lenders and, as of June 7, 2013, all the funds were transferred out of the escrow and returned to Silver State's lenders. JS ¶ 15, DX 15.

## II. Jurisdiction And Standard Of Review

The Tucker Act provides this Court with "jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a). For purposes of resolving the instant motions, the government does not dispute that Silver State's breach of contract claim arises out of an express contract with the government to sell Silver State the Henderson property. Def. Resp. at 3–4.

Summary judgment pursuant to RCFC 56 is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." A material fact is one "that might affect the outcome of the suit," and a genuine dispute exists when the finder of fact may reasonably resolve the dispute in favor of either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 250 (1986). If "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)); *see Demontiney v. United States*, 54 Fed. Cl. 780, 784 (2002) ("The judge must determine whether the evidence presents a disagreement sufficient to require submission to fact finding, or whether the issues presented are so one-sided that one party must prevail as a matter of law."). Any inferences that are to be drawn from the underlying facts must be done in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587. "When both parties move for summary judgment, the court must evaluate each motion on its own merits, resolving reasonable inferences against the party whose motion is under consideration." *First Commerce Corp. v. United States*, 335 F.3d 1373, 1379 (Fed. Cir. 2003); *see Lippmann v. United States*, 127 Fed. Cl. 238, 244 (2016) ("The [RCFC 56] standard also applies when the Court considers cross-motions for summary judgment.").

4

If the party opposing summary judgment does not challenge any material fact, it must provide an affidavit explaining why further discovery is necessary.  RCFC 56(d).  "[T]he facts that the movant seeks to discover must be foreseeably capable of breathing life into his claim or defense."  *Vivid Tech., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 809 (Fed. Cir. 1999) (citation omitted).  Critically, "[s]ummary judgment need not be denied merely to satisfy a litigant's speculative hope of finding some evidence [through discovery] that might tend to support a complaint."  *Sweats Fashions, Inc. v. Pannill Knitting Co., Inc.*, 833 F.2d 1560, 1566 (Fed. Cir. 1987) (quoting *Pure Gold, Inc. v. Syntex (U.S.A.), Inc.*, 739 F.2d 624, 627 (Fed. Cir. 1984)).  "A party may not simply assert in its brief that discovery is necessary and thereby overturn summary judgment when it failed . . . to set out reasons for the need for discovery in an affidavit."  *Id.*; *see Anham FZCO v. United States*, 123 Fed. Cl. 386, 388–89 (2015).

In this case, the material facts are not in dispute, as evidenced by the parties' having filed a joint stipulation of undisputed facts.  Accordingly, the central issue before the Court – whether Silver State's depositing of BLM's refund check and the defunding of the escrow account constitute an election of restitution – is a purely legal one, thus making this issue particularly well suited for summary judgment.

## III. The Election Of Remedies Doctrine Does Not Bar Silver State From Claiming Expectation Damages

The government argues that assuming, but without conceding, that Silver State proves a breach of an express contract, Silver State is still barred from pursuing expectation damages because of the election of remedies doctrine.  Def. Mot. at 12–13.  In the government's view, Silver State elected to receive restitution and thus can longer seek a "double recovery" of additional expectation damages.  *Id.*  Silver State counters that it never elected restitution and, concomitantly, that it never abandoned its claim for expectation damages.  Pl. Mot. at 12–14.  For the reasons explained below, the Court agrees with Silver State that the election of remedies doctrine is inapplicable to the present case.

In breach of contract situations, the non-breaching party has three enforceable interests:  expectation, restitution, and reliance.  *Hansen Bancorp, Inc. v. United States*, 367 F.3d 1297, 1308–09 (Fed. Cir. 2004).  It is the first two types of damages that are at issue in this case.  Expectation damages "'attempt to put [the non-breaching party] in as good a position as [it] would have been in had the contract been performed, that is, had there been no breach.'"  *Id.* (alteration omitted) (quoting Restatement (Second) Contracts § 344 cmt. a. (1981)); *see La Van v. United States*, 382 F.3d 1340, 1350–51 (Fed. Cir. 2004) ("'One way the law makes the non-breaching party whole is to give him the benefits he

5

expected to recover had the breach not occurred.'" (quoting *Glendale Fed. Bank, FSB v. United States*, 238 F.3d 1374, 1380 (Fed. Cir. 2001))).

Restitution, on the other hand, seeks "to restore the non-breaching party to the position he would have been in had there never been a contract to breach." *Hansen*, 367 F.3d at 1309 (internal quotation marks omitted). This form of damages "has been characterized as 'a fall-back position' for the injured party who is unable to prove expectancy damages." *Id.* (quoting *Glendale*, 238 F.3d at 1380)); *see Admiral Fin. Corp. v. United States*, 378 F.3d 1336, 1344 (Fed. Cir. 2004) ("[Restitution] has been recognized as an alternative measure of contract damages when a plaintiff's expectation damages are difficult to ascertain."). "The non-breaching party is commonly allowed the more generous measure of damages, unless that measure is unduly difficult to apply." *Griffin & Griffin Exploration, LLC v. United States*, 116 Fed. Cl. 163, 178 (2014).

"The common law doctrine of election of remedies applies where two possible remedies are available for the same legal injury. The basic purpose of the doctrine is to prevent a plaintiff from obtaining a windfall recovery, either by recovering two forms of relief that are premised on legal or factual theories that contradict one another or by recovering overlapping remedies for the same legal injury." *Homeland Training Ctr., LLC v. Summit Point Auto. Rsch. Ctr.*, 594 F.3d 285, 293 (4th Cir. 2010) (internal citations omitted). Under this doctrine, plaintiffs cannot collect both expectation and restitution damages, as this would constitute a "double redress for a single wrong." *Boulware v. Baldwin*, 545 F. App'x 725, 727 (10th Cir. 2013) (citation omitted).

Election questions usually arise in the following situation described in *Williston on Contracts*:

> When one party commits a material breach of contract, the other party has a choice between two inconsistent rights—he or she can either elect to allege a total breach, terminate the contract and bring an action [for restitution], or, instead, elect to keep the contract in force, declare the default only a partial breach, and recover those damages caused by that partial breach[.]

13 Williston on Contracts § 39:32 (4th ed.); *see Old Stone Corp. v. United States*, 450 F.3d 1360, 1371–72 (Fed. Cir. 2006). In such situations, "any act indicating an intent to continue the contract is an election, and an election to continue may occur simply by the injured party's failure to take action to end the agreement within a reasonable time after becoming aware of the facts." *Aleutian Constructors v. United States*, 24 Cl. Ct. 372, 384

(1991).[2]  This is because, "[c]ontinuance of the contract *is the most common and clearest case of waiver.*"  *Id.* (emphasis added) (citing *Cities Serv. Helex, Inc. v. United States*, 543 F.2d 1306 (Ct. Cl. 1976)).

Here, there is no evidence of any election of one remedy in lieu of another, nor is there any risk of a double recovery.

In contrast, the government seeks to extend the "election by conduct" doctrine, arguing that Silver State's depositing of the government's refund check and the liquidation of the escrow account together constituted an affirmative decision to accept restitution and, therefore, Silver State is barred from pursuing an "inconsistent" remedy of expectation damages.  Def. Mot. at 12–20.  The Court is unpersuaded.

The government relies upon cases that hold that a non-breaching party's failure to end performance of a contract following a breach constitutes an election that bars restitution.  *See* Def. Mot. at 16 (collecting cases); Def. Supp. Br. at 1.  But these cases do not support the government's argument here that Silver State somehow elected restitution simply because Silver State, without protest, received the funds the government returned.  For example, in *Cities Service Helex, Inc. v. United States*, following the government's breach of contract, "[n]ot only did [the plaintiffs] fail to take any action or make any statement to end the contract before that time, but they also continued their own performance, insisted on continued government performance, and accepted that government performance" and "specifically sought to force the Government to continue performance and succeeded in that effort."  543 F.2d at 1314–15 (footnotes omitted).  Because the plaintiffs' actions in *Cities Service* clearly demonstrated their intent to continue the contract's performance, the United States Court of Claims determined that it would be wholly inconsistent for the plaintiffs to later cancel the contract for breach.  *Id.*  Notably, the government, during oral argument, conceded that the facts at issue here are distinguishable from those at issue in *Cities Service*.  *See* Oral Argument Tr. at 12:21–25 ("[T]his is a very different case than most other cases because – and certainly in Cities Service there was an ongoing contract, and plaintiff elected to continue performance.").

While the government revoked the sale of the Henderson property and Silver State received a return of its funds paid, there is no inherent inconsistency in accepting a government-issued refund for the bid deposit and then pursuing the remainder of

---

[2] The Federal Circuit has indicated that continued performance, alone, may not constitute an election in the absence of "either (1) detrimental reliance by the breaching party . . . or (2) a benefit to the non-breaching party as a result of the delay . . . ."  *Old Stone*, 450 F.3d at 1372 (internal citations omitted).

Silver State's expectation damages. Indeed, the election doctrine is intended only to avoid a plaintiff's collecting for "two inconsistent rights[.]" 13 Williston on Contracts § 39:32 (4th ed.). As the Court noted during oral argument, "[w]hat would the double recovery be if the Court subtracts the amount returned from the expectancy damages?" Oral Argument Tr. at 13:12–14. Although that, admittedly, was a rhetorical question, the government did not attempt to answer the obvious challenge to its position.

Nor does Silver State's removal of funds from the escrow account constitute an election of remedies. Without more, such an act does not indicate an intent to accept restitution in lieu of expectation damages. Rather, one way to view Silver State's decision is that it reasonably sought to mitigate the interest payments on the loans that were no longer necessary following the government's refusal to proceed with the sale. The Court, again, sees no inconsistency between Silver State's conduct with respect to the escrow funds and its pursuit of expectancy damages in this case.[3] Furthermore, because restitution is only a "fall-back position" for when a plaintiff is unable to prove expectation damages, *Hansen*, 367 F.3d at 1309, the Court cannot construe Silver State's actions as having elected restitution. Indeed, while the government argues that Silver State should have "endorsed [the refund check] under protest" or "written a letter to the Government[,]" Oral Argument Tr. at 8:1–3, 11:8–10, the government was unable to cite a single case in which a failure to object to a returned payment constituted an election of remedy. *See id.* at 11:16–20. If anything, the Court believes that the returned sums are best viewed as a mitigation of any expectancy damages, assuming that Silver State can prove entitlement to such damages.

Turning to Silver State's motion for partial summary judgment, the government argued that the Court should not grant Silver State's motion (which would effectively preclude the government from raising the election of remedies defense at trial) because "the parties have not conducted any discovery into damages" and that "to the extent that there is something that comes up in damages discovery that there is an affirmative election, then we can present that evidence to the Court[.]" Oral Argument Tr. at 46:4–25. Although this argument is not without merit, the government did not move for relief pursuant to RCFC 56(d) and thus failed to demonstrate with an affidavit "how postponement of a ruling on the motion will enable [it], by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact." *Simmons Oil Corp. v. Tesoro Petroleum Corp.*, 86 F.3d 1138, 1144 (Fed. Cir. 1996) (citation omitted). Even had the government filed an affidavit, however, the Court is doubtful that the

---

[3] The Court notes that there may be a case where a plaintiff affirmatively and expressly indicates that the return of such monies constitutes an acceptable remedy elected in lieu of expectation damages. But those are not the facts of this case.

8

government's assertion that it may find a document showing that Silver State used the word "restitution" amounts to anything more than a "speculative hope of finding some evidence[.]" *Sweats Fashions*, 833 F.2d at 1566.

Additionally, Silver State correctly notes that any concerns that the government has raised about insufficient time for discovery are mitigated by the fact that it was the government that initially requested that the Court bifurcate the election of remedies issue from the remaining litigation and to allow for expedited briefing. Pl. Mot. at 8 (citing ECF No. 41 at 8–11). To the extent that the government sought the benefit of presenting the election of remedies defense separate from the rest of the issues in this case and before the conclusion of discovery into damages, the government will have to accept the adverse consequences of its decision.

## CONCLUSION

For the reasons explained above, the Court **GRANTS** Silver State's motion for partial summary judgment and **DENIES** the government's motion for summary judgment.

**IT IS SO ORDERED**.

s/Matthew H. Solomson<br>
Matthew H. Solomson<br>
Judge